IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

KONITA BONDMAN, et al.,           )
                                  )
                Plaintiffs        )
                                  )
vs.                               )        CASE NO. CV01-HGD-2116-J
                                  )
CITY OF JASPER, ALABAMA, et al.,  )
                                  )
                Defendants        )

**ENTERED**

AUG 1 8 2003

## MEMORANDUM OPINION

The above-entitled civil action is before the court on the motions for summary judgment filed by defendants, Jasper Retail Group, LLC;[1] the City of Jasper, Alabama; Officer James Vann; and Officer Jeff Sparks [Docs. #38 and #43]. This matter is before the undersigned United States Magistrate Judge based upon the consent of the parties pursuant to Rule 73, Fed.R.Civ.P.

Count I of the complaint [Doc. #9] alleges that two City of Jasper police officers, James Vann and Jeff Sparks, used excessive force, and illegally arrested and detained plaintiffs in violation of 42 U.S.C. § 1983, as the result of an incident that occurred at the Jasper Mall in Jasper, Alabama, on April 29, 2000. Plaintiffs also allege that the City of Jasper is liable for the actions of these officers due to its failure to properly train these officers. Count II of the

---

[1] Jasper Retail Group, LLC (Jasper Mall), was named incorrectly in the complaint as "Jasper Mall Associates."

complaint alleges that the City of Jasper is liable for the actions of the individual defendants under § 11-47-190, *Alabama Code*.[2]  Count II also alleges that the City of Jasper and the Jasper Mall are liable for the negligent hiring, retention, training and supervision of the defendant officers.

## STANDARD OF REVIEW

This matter is considered by the court pursuant to the provisions of Rule 56, Fed.R.Civ.P.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  Thus, summary judgment is appropriate where the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  The substantive law governing the action determines whether an element is essential. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.  A party seeking

---

[2] This statute makes a municipality liable for the neglect, unskillfulness, and carelessness of its officers or agents in their work done in the line and scope of their employment.

2

summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990), *cert. denied*, 500 U.S. 933, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

This circuit clearly holds that summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir. 1983); *see also, Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id*. at 255, 106 S.Ct. at 2514, *citing Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970). It is, therefore, under this standard that the court must determine whether the plaintiffs can meet their burden of coming forward with sufficient evidence as

3

to each material element of their claims sufficient to permit a reasonable jury to find in their favor.

## FACTUAL BACKGROUND

To say that there is a conflict in the testimony between the parties concerning what occurred in this case would be a great understatement. However, for the purpose of deciding these motions, to the extent that testimony is disputed, the court will consider the evidence in the light most favorable to plaintiffs without making any determinations as to credibility.

One of the few undisputed facts in this case is that an altercation occurred between plaintiffs and Jasper Police Officer James "Jimmie" Vann at the Jasper Mall on April 29, 2000. Jimmie Vann has been employed as a police officer for the City of Jasper, Alabama, for 21 years. [Vann Depo. at 7]. He also is employed when off-duty as a security guard for the Jasper Mall. When serving in that capacity, he wears his Jasper Police Department uniform and badge and carries his sidearm. [*Id.* at 8-9]. Officer Vann arrived at work at the Jasper Mall at 10:00 a.m. on April 29, 2000. This was earlier than his usual arrival time due to a Safe & Drug-Free Schools exhibit that was going on at the mall on that day. [*Id.* at 11].

During the evening of April 29, Officer Vann went to the area in the mall where a clothing store known as the Body Shop was located. He testified that

4

he went there to observe due to the report by an employee of another store, Catherine Metts. Ms. Metts stated that there was a lady with pink hair at that location who might have been drinking and who had cursed at some children and "shined her rear" at them. [*Id.* at 14-15]. What happened next is the subject of contention.

Plaintiff, Konita Bondman, stated that she went to the Jasper Mall on April 29, 2000, with her cousins, Marilyn Windham (also referred to as "Patti") and Sheila Bondman, her sister, Matisa Moody, and a friend known as "Reca." [K. Bondman Depo. at 45, 63]. At that time, Konita was dressed in a black tube dress which was hemmed approximately six inches above her knees and slit on both sides. Her hair was a combination of platinum and pink in color, and she wore a cowboy hat. [*Id.* at 52, 54-56; Windham Depo. at 47]. Though denying that she cursed at any children or caused any disturbance while in the Body Shop, Konita states that, at one point, there were children in the store laughing at her and pointing at her hair. [K. Bondman Depo. at 122-23, 136].

Konita testified that she shopped in the Body Shop for about 20 to 25 minutes and then went outside the store to sit on a bench with her cousin, Marilyn. According to Konita, Officer Vann came up and stared at them for two or three minutes and then stated to her: "Oh, you know I'm going to say something." [*Id.* at 63-66]. She testified that he then got in her face and stated: "You look like a prostitute. You are inappropriately dressed for the mall

5

and you have to leave." [*Id.* at 67]. Konita responded that signs on the doors in the mall stated that all that is required by the mall is a shirt and shoes, so she did not have to leave for that reason. In addition to calling her a prostitute, she testified that Officer Vann also repeatedly called her a "black bitch." [*Id.* at 69, 72]. At this point, Konita's cousin, Marilyn, said: "Come on, let's just go." At this time, Konita's sister, Matisa, came out of the Body Shop and they started walking toward the mall exit. [*Id.*]. According to Konita, Officer Vann followed and continued to speak to her in a loud, rude and hateful voice. [*Id.* at 70]. As they walked, Konita's sister was on one side of her and her cousin was on the other. [*Id.* at 73]. Konita and Vann continued to argue. [Windham Depo. at 57].

While walking to leave the mall, the parties passed a Caucasian female dressed similarly to Konita. Upon seeing this, Matisa Moody asked Officer Vann that, if Konita had to leave the mall, why did the other woman not have to leave. According to Konita, he responded: "You black bitch, you don't tell me how to do my job." [K. Bondman at 71].

According to Konita, after he said this, Officer Vann pulled out his mace and started spraying it. He came up to Konita and tried to grab her arm to put a handcuff on her. Her sister, Matisa, then stated to Officer Vann: "You're not going to arrest her. She didn't do anything wrong." Konita pulled her arm away from Officer Vann, who then sprayed her with mace in the right eye and

6

mouth.  He also sprayed her cousin, Marilyn, in the eyes.  [*Id.* at 74-76].
Konita asserts that she was maced by Officer Vann without justification.  [*Id.*
at 75].

Konita stated: "At the time he tried to arrest me, I pulled.  I ran around
Sneaky Pete's [hotdog stand]. . . .  He couldn't catch me."  She lost one of her
high-heeled shoes as she ran.  [*Id.* at 76].  After Konita got away from Officer
Vann, Marilyn alleges that he then swung and hit Marilyn in the chest [Windham
Depo. at 59] and tried to grab Matisa's arm to put handcuffs on her.  [Moody
Depo. at 52].  Moody testified that she also jerked her arm away because she
also had done nothing wrong.  Officer Vann then hit her with his forearm,
knocking her into a stand in the Sneaky Pete's restaurant.  [*Id.*].

According to Moody, the next thing she observed was Marilyn Windham
getting maced by Vann.  [*Id.* at 54].  Sheila Bondman states that, during this
time, she saw Officer Vann repeatedly punching Windham.  [S. Bondman Depo.
at 135-36].  She states that she told Officer Vann to quit hitting her sister
because she had just had a baby.  He told her "to get the f--- back."  [*Id.* at
133, 135-36].   He then grabbed Windham and cuffed her on one arm.
According to Matisa Moody, Officer Vann then tried to put the other handcuff on
Moody but was unable to do so.  [Moody Depo. at 54; S. Bondman Depo. at
132].   Officer Vann then proceeded to drag Windham out of the mall.
[Windham Depo. at 73].  According to Moody, people were yelling at Officer

7

Vann to let Windham go because she had not done anything. [Moody Depo. at 61]. As he pulled Windham toward the door, Vann kept pulling out his mace and telling everyone in the gathering crowd of spectators to stay back. [S. Bondman Depo. at 138; Moody Depo. at 55]. During this time, Officer Vann also was calling for assistance. [S. Bondman Depo. at 141; Moody Depo. at 59].

Outside the mall, other law enforcement officers began to arrive to assist Officer Vann. Sheila Bondman testified that, after getting outside the mall, she continued to tell Vann to quit hitting her sister. [S. Bondman Depo. at 145]. At that time, Sheila states that Vann called an Officer Sparks who then tackled her. She was then handcuffed. [*Id.* at 150]. Sheila Bondman testified that she only knows the officer's last name to be Sparks. She does not recall his first name but believes she was told by a jailer that it was Jeff. [*Id.* at 202]. Konita Bondman states that she had never seen Officer Sparks before that day. She testified that she saw him for the first time during the altercation outside the mall. She testified that she was told by another officer that Sparks' first name was Jeff. [K. Bondman Depo. at 171-74].

Officer Vann subsequently handed Windham off to another officer. [Moody Depo. at 62]. The remaining unattached handcuff was put on her other arm. [Windham Depo. at 122]. Windham states that she observed Konita walking down the sidewalk a few feet away from her. She then saw Vann grab

8

Konita by the neck, slam her on the ground and pin her arms down. [*Id.* at 74-75].

Konita Bondman testified that after she got free of Officer Vann and ran around Sneaky Pete's, she exited the mall through J.C. Penney Department Store. She observed a large number of police officers outside the mall and saw her cousin, Sheila, on the ground. [K. Bondman Depo. at 77]. She walked in their direction. Officer Vann spotted Konita, grabbed her, cursed at her and slammed her to the ground. He grabbed her hair and was banging her head into the ground. [*Id.* at 80, 82-83]. Konita Bondman states that she never resisted Officer Vann when she was thrown to the ground and cuffed. [*Id.* at 174].

According to Konita, Officer Vann grabbed her fingers and bent them back. When she complained, he told her: "Shut up, you black bitch. You're worthless." When she told him he was breaking her finger, he told her: "Shut up. I know what I'm doing." [*Id.* at 83]. Her finger subsequently was determined to have been broken. She had bruises and contusion on her arms and legs. However, there was no significant physical injury to her head. [*Id.* at 99, 102]. Matisa Moody also observed Vann repeatedly banging the back of Konita's head on the ground. She testified that, upon observing this, she started to yell at Officer Vann, telling him to let Konita go because she had not done anything. [Moody Depo. at 67-68].

9

Marilyn Windham testified that she went over to where Officer Vann and Konita were located and told Officer Vann that he did not need to treat her cousin that way. According to Windham, Officer Vann was still kneeling over Konita when she told him this. She states that he responded by punching her in the stomach. [Windham Depo. at 124]. An officer, identified by his name tag as Sparks, assisted Vann in holding down Konita while the cuffs were attached. [Moody Depo. at 69]. After this exchange with Vann, Sparks came over and put Windham on her stomach and put his knee in her back. [Windham Depo. at 126]. She was on her stomach 10 to 15 minutes with both hands cuffed. [Windham Depo. at 77].

Konita Bondman, Sheila Bondman and Marilyn Windham all were transported to jail. Sheila and Windham were charged with assault in the second degree. Konita was initially charged with criminal trespass. They all subsequently were indicted on charges of assault second degree, and Konita also was indicted for criminal trespass. [See Doc. #44, Exhs. I, J, and K].

Officer Vann's testimony about the incident differs considerably from that of plaintiffs. He asserts that plaintiffs interfered with his attempts to escort them from the mall, and three of them attacked him physically during his attempts to carry out his duties. Vann denies using more than minimal force against any plaintiff, and he denies using racial epithets. He also contends he

10

had sufficient probable cause to arrest Konita and Sheila Bondman and Marilyn Windham. [See Doc. #38, Exh. B, Vann Depo.; Doc. #44, Exh. E, Vann Aff.].

Jeff Sparks is a Lieutenant with the Jasper Police Department. On April 29, 2000 he was the patrol supervisor on duty. He testified that he received a call from the police dispatcher that day indicating that backup police officers were needed at the Jasper Mall. He arrived at approximately 8:04 p.m. [Doc. #44, Exh. H, Aff. of Jeff Sparks]. He states that his only involvement in the incident at the mall was transporting one of the plaintiffs to the city jail. [Id.]. At the time of this incident, Sparks' cousin, Mike Sparks, also was employed as a Jasper police officer. It is Jeff's understanding that Mike assisted Officer Vann with the arrests of the plaintiffs. [Id.]. Officer Vann testified that Mike Sparks, not Jeff Sparks, assisted him with the arrests of the plaintiffs. [Vann Depo. at 46].

There is no evidence that before this incident, Officer Vann had been involved in any similar incidents. According to Jasper Mall General Manager Marsha Massey, no customer ever has complained to her about Officer Vann, and he has no history of acting inappropriately toward anyone in the mall. [Aff. of Marsha Massey; Massey Depo. at 17]. Massey has been manager of the Jasper Mall for 20 years. [Massey Depo. at 6]. Plaintiffs presented no evidence regarding the training and supervision of Officer Vann, and it is undisputed that Officer Jeff Sparks was not employed by the Jasper Mall in any capacity.

11

Massey also testified that the only written dress code at the mall is one which requires patrons to wear a shirt and shoes. [*Id.* at 13]. However, she also testified that she makes it known to the mall security officers that she expects the security officers to ask anyone with obscenity written on a t-shirt to either take it off or leave the mall. [*Id.* at 13-14]. She also stated that if patrons wear "blue jeans where their butt shows, or their . . . private parts . . . shows, then they are asked to leave the property. Girls with their breasts exposed, or their butts exposed, or just common decency is a rule of thumb." [*Id.* at 14].

### DISCUSSION

### **Jasper Mall**

The only claim in plaintiffs' complaint against Jasper Mall is that it is liable for the negligent hiring, retention, training and supervision of Officers Vann and Sparks. It is undisputed that Officer Jeff Sparks was not employed by the Jasper Mall at the time of this event. Therefore, there is no liability for his actions on the part of Jasper Mall.

As to Officer Vann, it is well established that an employer is liable for the intentional torts of its employee if: (1) the employee's acts are committed in furtherance of the business of the employer; (2) the employee's acts are within the line and scope of his employment; or (3) the employer participated in,

12

authorized, or ratified the tortious acts.  *Potts v. BE&K Construction Co.*, 604 So.2d 398, 400 (Ala. 1992); *Ex parte Atmore Community Hospital*, 719 So.2d 1190 (Ala. 1998).

However, plaintiffs have not pled that the liability of the Jasper Mall for assault, illegal arrest or detention is based on *respondeat superior*.  They only allege that Jasper Mall is liable for its negligent hiring, retention, training, and supervision of Vann.  There is no evidence in the record concerning any of these factors.  Therefore, Jasper Mall is due to be dismissed from this lawsuit.

Even if properly pled, Jasper Mall also is not liable under a *respondeat superior* theory.  The general manager of the mall testified that, in addition to providing security, the security officers' duties include enforcing the dress codes.  The policy of the mall is that persons not following the dress code are asked to change their clothes or leave.  Assaulting patrons of the mall is not a part of the job duties assigned to Officer Vann.  The acts alleged by plaintiffs are intentional acts, not negligent ones. There is no evidence that Jasper Mall participated in, authorized, or ratified the alleged tortious acts which plaintiffs themselves allege were willful, malicious or in bad faith.  [Doc. #53, Plaintiffs' Reply Brief to Defendants' Motion for Summary Judgment, at 17].[3]  Plaintiffs' counsel does not even address this factor in his reply to Jasper Mall's motion for

---

[3] Counsel for plaintiffs states: "As for Officer Vann individually, 'An employee is not protected by discretionary function immunity if his actions were committed fraudulently, willfully, maliciously, or in bad faith.' *Tuscaloosa County v. Henderson*, 699 So.2d 1274, 1278 (Ala. 1997). **That is clearly the case here.**"  (emphasis added).

13

summary judgment. [*See* Doc. #53]. Therefore, defendants' motion for summary judgment as to Jasper Retail Group, LLC is due to be granted.

## Officer Jeff Sparks

The motion for summary judgment as to Jeff Sparks is also due to be granted. Plaintiffs concede that Officer Jeff Sparks had no involvement in the arrests of plaintiffs. [*See id.* at 9, ¶ 62].[4] Therefore, he is entitled to summary judgment in his favor with respect to all claims asserted by plaintiffs.

## City of Jasper, Alabama

### Count I

In Count I of the complaint, plaintiffs assert that the City of Jasper is liable to them under 42 U.S.C. § 1983 based on its failure to properly train Officers Vann and Sparks.

The evaluation of any § 1983 municipal liability claim necessarily begins with an examination of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In that case, the Supreme Court made clear that municipal liability must be predicated on more than a *respondeat*

---

[4] Although difficult to follow, plaintiffs admit in ¶ 62 of their response that Sentence 62 in the statement of facts presented in Document #44 (the brief and evidence in support of the motion for summary judgment of the City of Jasper, Jimmie Vann and Jeff Sparks) is true. Sentence 62 states: Lieutenant Sparks had no involvement in making any of the arrests. (*See* Doc. #44, Exh. H, Aff. of Jeff Sparks, denying any involvement in the arrests of plaintiffs and stating that his only involvement was transporting one of the plaintiffs to the city jail).

*superior* theory.   The plaintiff must show that the government employees'
unconstitutional action "implements or executes a policy statement, ordinance,
regulation, or decision officially adopted and promulgated by that body's
officers" or else is "visited pursuant to governmental 'custom' even though such
custom has not received formal approval through the body's official decision
making channels."  *Id.* at 690-91, 98 S.Ct. at 2035-36.

Though *Monell* thus established that the basis for municipal liability could
be found in either "policy" or "custom," the Court expressly declined to clarify
the nature of the showing required from the plaintiff to implicate the
municipality.  The Court deemed it better to defer "further development of this
action to another day."  *Id.* at 695, 98 S.Ct. at 2038.  However, plaintiffs have
failed to make out a case against the City of Jasper under any possible
definition of "custom" or "policy."  At most, they established that the city failed
to train one policeman properly in the legal basis for and appropriate methods
of arrest.  Even if such failure could be said to be "the moving force of the
constitutional violation," as required by *Monell*, *see Polk County v. Dodson*, 454
U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell*, 436
U.S. at 695, 98 S.Ct. at 2038), plaintiffs' proof does not in any case satisfy
*Monell*'s further requirement that the failure be shown to have resulted from a
custom that was "so permanent and well settled" as to have "the force of law."
*Monell*, 436 U.S. at 691, 98 S.Ct. at 2036.  The court finds that the City of

15

Jasper is entitled to summary judgment on plaintiffs' claims under 42 U.S.C.

§ 1983 on the basis of the principles set forth in *Monell* and *Board of County*

*Com'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Therefore, defendants' motion for summary judgment in favor of the City of

Jasper as to the alleged violation of 42 U.S.C. § 1983 is due to be granted.

## Count II

Plaintiffs allege that the City of Jasper is also liable to them under

§ 11-47-190, *Alabama Code*, and is liable for the negligent hiring, retention,

training and supervision of the defendant officers.

Section 11-47-190, *Alabama Code*, provides, in relevant part:

> No city or town shall be liable for damages for injury
> done to or wrong suffered by any person or
> corporation, unless said injury or wrong was done or
> suffered through the neglect, carelessness or
> unskillfulness of some agent, officer or employee of the
> municipality engaged in work therefor and while acting
> in the line of his duty . . . .

The statute, therefore, specifically provides for *respondeat superior* liability for

municipalities if the claims supporting such liability are based on the negligence,

carelessness or unskillfulness of a municipal agent, officer or employee.  The

Alabama Supreme Court has noted that "[a] municipality . . . is generally

chargeable with the negligence of its employees acting within the line and scope

of their employment."  *Rich v. City of Mobile*, 410 So.2d 385, 387 (Ala. 1982).

16

In *Couch v. City of Sheffield*, 708 So.2d 144 (Ala. 1998), the Alabama Supreme Court found that the City of Sheffield was immune from liability under § 11-47-190 for *intentional* torts. *Id.* at 153. Viewing the evidence from plaintiffs' perspective, the actions of Vann were neither negligent nor careless; they were intentional acts. Plaintiffs concede as much in their brief. [*See* Doc. #53, Plaintiffs' Reply Brief to Defendants' Motion for Summary Judgment, at 17; Footnote 3, *supra*].

With regard to the claim that the City of Jasper failed to properly train Officer Vann, there is no evidence to support this claim. In fact, there is no evidence regarding his training at all. The court, however, notes that Officer Vann has been a police officer for 21 years. Thus, he falls under the requirements of the Alabama Peace Officers' Standards and Training Act, §§ 36-21-41, *et seq.*, *Alabama Code*, of which this court takes judicial knowledge. This Act requires a police officer, such as Officer Vann, to be certified through a designated police academy course as established by the Alabama Peace Officers' Standards and Training Commission. § 36-21-46, *Alabama Code*. The established regimen requires that an officer successfully complete 480 hours of basic training including courses in legal issues (such as probable cause and arrest), physical agility and firearms. Rule 650-X-4-.01, *Ala. Admin. Code*. Furthermore, to keep this certification, a police officer is required to complete 12 hours annually of continuing education courses

17

approved by the Alabama Police Officers' Standards and Training Commission.

§ 36-21-51, *Alabama Code*. Since Officer Vann was working as a police officer

for the City of Jasper, he is required to have taken this training. Plaintiffs have

put forth no evidence that Officer Vann's training was negligent in any respect.

Therefore, the City of Jasper's motion for summary judgment as to Count II of

the complaint is due to be granted.

## **Officer Jimmie Vann**

### Count I

Plaintiffs also allege that Officer Jimmie Vann is liable to them for a

violation of 42 U.S.C. § 1983 as the result of his use of excessive force and

their illegal arrests and detentions. Vann asserts that he is not liable by virtue

of qualified immunity. Qualified immunity shields government actors in all but

exceptional cases. *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146 (11th Cir.

1994). An official, in his individual capacity, is entitled to qualified immunity if

he is performing discretionary functions and his actions do "not violate clearly

established statutory or constitutional rights of which a reasonable person

would have known." *Riley v. Camp*, 130 F.3d 958, 968 (11th Cir. 1997) (*en

banc*) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982)).

In order to show that a right is clearly established, a plaintiff must

> show that there existed sufficient case law establishing
> the contours of his or her constitutional rights such
> that the unlawfulness of the defendant's conduct would
> have been apparent to a reasonable official in the same
> circumstances . . . . If no such case law exists, then
> the defendant is entitled to qualified immunity.

*Nicholson v. Georgia Dept. of Human Resources*, 918 F.2d 145, 147 (11th Cir. 1990).

The Fourth Amendment, made applicable to the states by virtue of its incorporation into the Fourteenth Amendment, see *Baker v. McCollan*, 443 U.S. 137, 142, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979), and *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (plurality opinion), provides in pertinent part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.   It is well established that a § 1983 claim may lie for a Fourth Amendment violation where a plaintiff is arrested and detained incident thereto where such "seizure" is "unreasonable" in that it is neither pursuant to a warrant nor supported by probable cause. *See Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996); *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990); *Reeves v. City of Jackson*, 608 F.2d 644, 650 (5th Cir. 1979).   In order to prevail on a § 1983 claim alleging that her warrantless arrest was unconstitutional, a plaintiff has the burden at trial to prove the absence of probable cause. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998).

19

Vann claims he had probable cause to arrest Konita for acting disorderly while refusing his lawful order that she leave the mall, entitling him to qualified immunity and, hence, summary judgment on this claim. *See Marx*, 905 F.2d at 1505-06 ("The existence of probable cause . . . is an absolute bar to a § 1983 action for false arrest."). In order for probable cause to exist, "an arrest [must] be objectively reasonable under the totality of the circumstances," *Bailey v. Board of County Com'rs of Alachua County*, 956 F.2d 1112, 1119 (11th Cir. 1992), and an officer's subjective intentions and beliefs play no role in determining the existence of probable cause. *See Rankin*, 133 F.3d at 1433-34. A "law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge . . . would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 1120 (quoting *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990)).

Qualified immunity generally shields government officials from individual liability under § 1983, provided that "their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter*, 28 F.3d at 1149 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Because qualified immunity is the 'usual rule' for government actors sued in their individual capacities, it will shield them unless case law establishes a bright line

20

in 'a concrete and factually defined context' that makes a violation of federal law obvious." *Scarbrough v. Myles*, 245 F.3d 1299, 1301 (11th Cir. 2001) (quoting *Lassiter*, 28 F.3d at 1149).

In the context of a claim of wrongful arrest, even if an officer lacks "actual" probable cause, he still will be protected by qualified immunity if there is at least "arguable" probable cause; *i.e.*, if a reasonable police officer, given his knowledge of the facts and circumstances, could have believed there was probable cause to make a warrantless arrest. *See Jones v. Cannon*, 174 F.3d 1271, 1283 & n.3 (11th Cir. 1999). When deciding the issue of qualified immunity on summary judgment, this court is required to resolve all issues of material fact in favor of plaintiffs and then answer the legal question of whether an official is entitled to qualified immunity under that version of the facts. *Redd v. City of Enterprise*, 140 F.3d 1378, 1380 (11th Cir. 1998).

In the context of a claim of excessive force, it is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *see also Cottrell v. Caldwell*, 85 F.3d 1480, 1492 (11th Cir. 1996). Whether the force used is reasonable turns on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

21

attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872.   An officer will be entitled to qualified immunity if his actions were "objectively reasonable"; that is, if a reasonable officer in the same situation would have believed that the force used was not excessive. *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Here, the court concludes that, viewing the evidence in the light most favorable to plaintiffs, a jury could conclude that Vann had neither actual nor arguable probable cause to arrest Konita Bondman, Sheila Bondman or Marilyn Windham for disorderly conduct or assault and that the force used was excessive.   Konita admits that she voiced displeasure at being asked to leave the mall.   However, Konita claims that in expressing such sentiments, she was not loud or disorderly.   She also claims that she was leaving the mall as directed and only ran after Vann sprayed her with mace without reason.   The other plaintiffs assert, in essence, that they acted in self-defense when Vann attempted to handcuff Konita and began spraying mace at them for no reason. Though not arrested, Matisa Moody states that in the ensuing melee, she was maced once and punched by Officer Vann on several occasions without reason. Under these circumstances, Officer Vann was not justified in using *any* force, and a reasonable officer thus would have recognized that the force used was excessive.

22

Therefore, Jimmie Vann is not entitled to qualified immunity at this time, and summary judgment as to Officer Vann, on that basis, is due to be denied. The factual disputes as to the events made the basis of this action are best resolved by the submission of special interrogatories to a jury regarding each plaintiff and each claim made by them. *See Johnson v. Breeden*, 280 F.3d 1308, 1317-18 (11th Cir. 2002).

<u>Count II</u>

In Count II of the complaint, plaintiffs allege that the City of Jasper is liable pursuant to § 11-47-190, *Alabama Code*, for the "neglect, unskillfulness and carelessness of its officers." They also allege that Jasper Mall and the City of Jasper are liable for the negligent hiring, training and retention of the officers. These claims are discussed above. There are no state law claims advanced against the remaining defendant, Officer Vann. Therefore, a discussion of discretionary function immunity is unnecessary. In any event, Vann is not entitled to discretionary function immunity when viewing the evidence in the light most favorable to plaintiffs because that evidence reflects an intentional act on his part, not a negligent one. *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998).

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

23

DONE this 18th day of August, 2003.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

24